COPY

THEODORE K. STREAM, State Bar No. 138160
Email: Ted.Stream@greshamsavage.com
GRESHAM SAVAGE NOLAN & TILDEN
A Professional Corporation
3750 University Avenue, Suite 250
Riverside, CA 92501-3335

FILED
CLERK, U.S. DISTRICT COURT
DEC 26 2013
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION   BY DEPUTY

Attorneys for Plaintiff Minka Lighting, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MINKA LIGHTING, INC., <br><br> Plaintiff, <br><br> v. <br><br> BATH KITCHEN DÉCOR, LLC d/b/a EAGLES LIGHTING LLC, LARRY KRAZYMAN, Individually, and DAVID TROPPER, Individually, <br><br> Defendants. | CASE NO. ED CV 13-02370 RGK (MRWx) <br><br> **COMPLAINT FOR** <br><br> **II. COPYRIGHT INFRINGEMENT [17 U.S.C. § 501]** <br><br> **II. FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. § 1125(a)]** <br><br> **III. FALSE DESIGNATIONS OF ORIGIN, FALSE REPRESENTATIONS IN COMMERCE AND UNFAIR COMPETITION [15 U.S.C. § 1125(A)]** <br><br> **IV. TRADEMARK COUNTERFEITING [15 U.S.C. § 1114(A)]** <br><br> **V. STATUTORY UNFAIR COMPETITION [CAL. BUS. & PROF. CODE § 17200 *et seq*.]** <br><br> **VI. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS** <br><br> **VII. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Minka Lighting, Inc. ("Minka") files this Original Complaint against Defendant Bath Kitchen Decor, LLC d/b/a Eagles Lighting LLC, Larry Krazyman,

1

and David Tropper (collectively, "Defendants"), and for cause would show the Court as follows:

## JURISDICTION AND VENUE

1. This is a suit for copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act") and trademark infringement, trademark counterfeiting and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"). This Court has subject matter jurisdiction pursuant to 28 U.S.C.§§ 1331 and 1338(a) and (b). This Court also has original jurisdiction over this controversy under 15 U.S.C. § 1121 because it is a civil action involving trademark infringement, trademark counterfeiting and unfair competition under the Lanham Act. This Court has supplemental jurisdiction over the California law claim that is within the same case or controversy under 28 U.S.C. § 1367.

2. The Court has personal jurisdiction over Defendants because Defendants conduct business in this State, Plaintiff's claims of Defendants' copyright infringement, trademark infringement, trademark counterfeiting, unfair competition, and tortious interference with contractual relations occur in this State, and Defendants should reasonably anticipate being haled into Court in this State.

3. The Court also has personal jurisdiction over Defendants because they have committed torts in whole or in part in this State. As described below, Defendants' acts include copyright infringement, trademark infringement, trademark counterfeiting and unfair competition, California statutory unfair competition, and tortious interference with contractual relations.

4. Minka is the only Plaintiff in this case, and it resides within the Eastern Division of the Central District of California. Venue is proper in the Central District of California pursuant to 28 U.S.C. §§1391(b) and (c) because Plaintiff resides in this District; a substantial part of the events or omissions giving rise to Plaintiff's claims

occurred in this District; and Defendants have committed torts in whole or in part in this District.

## THE PARTIES

5. Plaintiff Minka is a corporation duly organized and existing under the laws of the State of California, with its principal place of business at 1151 West Bradford Court, Corona, California 92882.

6. On information and belief, Defendant Bath Kitchen Decor, LLC ("BKD") is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business at 185-12 Union Turnpike, Fresh Meadows, New York 11366. Defendant BKD may be served with process via its registered agent, Defendant David Tropper, or its officer and/or owner, Larry Krazyman, at 185-12 Union Turnpike, Fresh Meadows, New York 11366.

7. On information and belief, Defendant BKD also does business as Eagles Lighting LLC ("Eagles Lighting"), which, on information and belief, is not registered to do business in any state. On information and belief, Eagles Lighting is not registered as a fictitious name for Defendant BKD in any state. On information and belief, Defendant Eagles Lighting has the same principal place of business and phone number as BKD, i.e., 185-12 Union Turnpike, Fresh Meadows, New York 11366. Defendant Eagles Lighting may be served with process via BKD's registered agent, Defendant David Tropper, or Defendant BKD's officer and/or owner, Larry Krazyman, at 185-12 Union Turnpike, Fresh Meadows, New York 11366.

8. On information and belief, Defendant Larry Krazyman ("Krazyman") is a resident of the state of New York. On information and belief, Defendant Krazyman is an officer and/or owner of Defendant BKD and Eagles Lighting. On information and belief, Defendant Krazyman owns or controls the websites www.bathkitchendecor.com, www.eagleslighting.com, www.designersupplyhouse.com, www.lightingshowhouse.com, and

www.decorfixtures.com . On information and belief, Defendant Krazyman has primary responsibility for the operation and management of the above-identified businesses and/or websites. On information and belief, Defendant Krazyman has the right and ability to supervise the activities of Defendant BKD and Eagles Lighting and a direct financial interest in those businesses. Defendant Krazyman may be served with process by serving him at either 185-12 Union Turnpike, Fresh Meadows, New York 11366, or 679 Montgomery St., Apt. 3, Brooklyn, New York 11213-5155.

9. On information and belief, Defendant David Tropper ("Tropper") is a resident of the state of New York. On information and belief, Defendant Tropper is listed as the "organizer" of Defendant BKD and the agent for service of process of Defendant BKD. *See* Plaintiff's Exhibit A. Alternatively, on information and belief, Defendant Tropper has primary or joint responsibility for the operations and co-management of the above-identified businesses. On information and belief, Defendant Tropper has the right and ability to supervise the activities of Defendant BKD and Eagles Lighting and a direct financial interest in those businesses. Defendant Tropper may be served with process by serving him at either 185-12 Union Turnpike, Fresh Meadows, New York 11366, or 8425 Abingdon Rd., Kew Gardens, New York 11415-2101.

## FACTS COMMON TO ALL COUNTS

### 1. Minka's Business And Authorized Distributors

10. Founded in 1982, Minka is in the business of designing, distributing, marketing, and selling high-quality decorative lights, ceiling fans and other home products and accessories. In its 30+ years of existence, Minka has become a leader in the decorative lighting and ceiling fan industry.

11. Minka owns more than 623 U.S. patents, 230 U.S. registered copyrights and 39 U.S. registered trademarks covering various lighting products and ceiling fans. Minka uses various trademarks with its lighting products and ceiling fans, including

the registered marks MINKA LAVERY, METROPOLITAN, GEORGE KOVACS, MINKA-AIRE, and AMBIENCE.

12. As part of its marketing and advertising efforts, Minka uses catalogs and its website to display original photographs of the company's decorative lighting products and ceiling fans. Minka has created its website and catalogs of photographs of its lighting products and ceiling fans over a period of decades. Minka has invested much effort, time, resources, and creativity in producing these original photographs of Minka's lighting products and ceiling fans. Minka has registered some of its copyrights in the photographs with the U.S. Copyright Office, and has filed applications to register its copyrights in other photographs of its products.

13. Minka sells its lighting products and ceiling fans exclusively via authorized distributors located throughout the United States, including in this District. Minka has approximately 2,000 authorized distributors in the United States. Minka sells its products at wholesale prices to its authorized distributors, who in turn, sell Minka products to consumers located throughout the United States.

14. Minka representatives investigate and approve each new authorized distributor of Minka products. Minka ensures that each distributor has a high quality presentation in its store and on its website, and the necessary skills, resources, financial ability, parts and product inventory, and warranty service to ensure that a customer has a quality experience before, during and after the sale of Minka's products.

15. Minka's authorized distributors are kept abreast of Minka's available inventory and trained and given details about Minka's new products. Minka's authorized distributors are required to timely deliver Minka products to their customers without significant back orders, cancellations and/or delays. Minka works closely with its authorized distributors on any customer warranty claim or sales issue.

16. As part of its internal quality control procedures, Minka affixes labels to the outside of the product packaging that include the name of its authorized distributor and numerous codes that relate to the purchase order, manufacturing and shipping dates and other key information. The labels ensure Minka's ability to track product sales, process warranty claims, evaluate customer experiences and distributor performance, assist in a recall if necessary, and issue credits based on a documented sale within Minka's authorized distributor network.

17. Minka uses the information on its labels as a tracking device to monitor and enforce Minka's quality control process and standards by its authorized distributors for Minka's and the end customers' benefit.

18. As part of its quality control process, Minka ensures that the packaging supplied with its products accurately identifies its authorized distributor. The labels identifying the authorized distributor and other important information are typically located on the side of the packaging, and easily visible to customers.

19. The labels are permanently affixed to prevent their removal from the packaging of the Minka product. If the labels are accidently or intentionally removed from the packaged product, it results in partial mutilation of the box. The unauthorized removal of the labels may lead a customer to believe that the Minka product inside the package has been tampered with, is inferior, defective, or otherwise untrustworthy. This detracts from the value of the Minka product in the minds of relevant consumers.

20. Like other designers and manufacturers in the lighting and ceiling fan industry, Minka uses written agreements with its authorized distributors. As part of its agreement with its authorized distributors, Minka permits those distributors to use Minka's copyrighted works, including photographs of its lighting products and ceiling fans. Authorized distributors may use Minka's copyrighted photographs and trademarks only in connection with advertising and marketing Minka products for

authorized distribution and sales. Minka's authorized distributors do not have permission to sub-license or otherwise authorize any third party to use Minka's copyrighted photographs or trademarks.

21. Part of Minka's contractual relationship with its authorized distributors involves Minka's pricing policy. Minka and its authorized distributors agree that certain of Minka's products should be advertised, promoted, offered and/or sold at a minimum resale price. Under its pricing policy, Minka has the option to discontinue selling or decline to sell its products to an authorized distributor that violates Minka's pricing policy.

22. Part of Minka's contractual relationship with its authorized dealers also involves Minka's policy regarding sales of its products to unauthorized distributors. Minka and its authorized distributors agree that the distributors should not sell Minka products to unauthorized distributors. Under this policy, Minka has the option to discontinue selling or decline to sell its products to an authorized distributor that resells Minka products to an unauthorized distributor.

## 2. Defendants' Infringing Activities

23. Defendant BKD and Defendants' Websites are not and have never been authorized distributors of Minka products. On information and belief, Minka has not knowingly shipped Minka products directly to Defendant BKD. Defendants Krazyman and Tropper are not and have never been authorized distributors of Minka products. On information and belief, Minka has not knowingly shipped Minka products directly to Defendants Krazyman or Tropper.

24. On information and belief, Defendants own, operate, manage and/or control the websites www.bathkitchendecor.com, www.eagleslighting.com, www.designersupplyhouse.com, www.lightingshowhouse.com and www.decorfixtures.com (collectively, "Defendants' Websites"). On information and belief, the websites www.eagleslighting.com and www.decorfixtures.com redirect or

are "pointed to" the website www.bathkitchendecor.com. On information and belief, Defendants advertise, promote, offer for sale and sell purported Minka lighting products and ceiling fans on and from the Defendants' Websites. Defendants' Websites advertise and offer for sale thousands of purported Minka products. See Plaintiff's Exhibits B - E.

25. Defendants' Websites include: (a) reproductions of Minka's copyrighted photographs of its products, (b) descriptions of Minka's products, (c) Minka's model numbers for its products, and (d) Minka's trademarks used with its products. This information is likely to confuse consumers to believe that Defendants are sponsored by, affiliated or associated with, or endorsed by, Minka, when they are not.

26. Defendants' Websites also include the retail price and savings for each purported Minka product that Defendants offer. The Defendants' listed price for a purported Minka product is markedly below the price offered by a Minka authorized distributor for a genuine Minka product.

27. On information and belief, Defendant BKD makes multiple false representations to consumers about its business relationship with Minka. For example, Defendant BKD falsely represents to consumers that it ships products on an expedited basis directly from the manufacturer, e.g., Minka. Defendant BKD has no business relationship with Minka, and has no communications with Minka about expediting shipping of Minka products to customers. Minka does not generally ship Minka products directly to end consumers and Minka does not ship Minka products directly to Defendant BKD.

28. Defendant BKD falsely represents to consumers that it can check on a delivery date from the manufacturer, e.g., Minka. Defendant BKD cannot order any Minka products directly from Minka and therefore cannot check on the status of any orders from Minka because Defendant BKD is not and has never been an authorized distributor of Minka products.

29. Defendant BKD falsely represents to consumers that it will coordinate shipping products directly to the consumers. Minka does not generally ship Minka products directly to consumers and Defendant cannot coordinate any shipping arrangements on Minka's behalf.

30. Defendant BKD falsely represents to consumers that it may inquire about product lead time from manufacturers e.g., Minka. Defendant BKD has no affiliation or business relationship with Minka and therefore cannot check on product lead time for delivery of any Minka products.

31. Despite its false representations to consumers, Defendants must resort to unauthorized actions to try to purchase products for its customers. On information and belief, Defendants wrongfully induce or attempt to induce one or more authorized distributors of Minka to sell inventory to Defendants in violation of the authorized distributors' contractual relationship with Minka.

32. On information and belief, and as derived from reviewing numerous purchases of purported Minka products from Defendant BKD, Defendants have torn off or mutilated the labels from the product packaging. On information and belief, Defendants routinely ship purported Minka products with no authorized labels to Defendants' customers. Defendants' systematic and intentional defacing of Minka product packaging is done solely to protect their economic interests by cloaking their sources of purported Minka products.

33. On information and belief, Defendant BKD does not offer the same Return Policy as many of Minka's authorized distributors. Defendant BKD requires a return within thirty (30) days of a customer receiving a product, whereas some of Minka's authorized distributors allow returns within sixty (60) days of a customer receiving a product.

34. On information and belief, Defendant BKD has a Return Policy that prohibits the return of any installed products, whereas some of Minka's authorized

distributors allow returns of installed products (sometimes subject to a set restocking fee).

35. On information and belief, Defendant BKD requires the return of purported Minka products in the "original packaging", which on information and belief, Defendants alter or mutilate before delivery, making return of the product in the original packaging impossible.

36. On information and belief, Defendants' business model of trying to locate unauthorized sources of purported Minka products (since Defendants cannot purchase genuine Minka products from Minka) often results in substantial delays in customers receiving products from Defendant BKD. The New York Better Business Bureau has given Defendant BKD an F rating, and many customers have complained to Defendants and others about Defendants' poor service. See Plaintiff's Exhibits F - G. Defendant BKD's delay in delivering products offered under Minka's trademarks to customers negatively affects Minka's ability to control the quality of the products and services it provides under Minka's marks.

37. Defendants' above-identified acts are likely to confuse customers to believe that the poor service they receive from Defendant BKD is from an authorized distributor of Minka, and that Minka is in control of or approves Defendants' poor service. The likelihood of customer confusion is increased because Defendants are using Minka's copyrighted photographs, registered and common-law marks, and product descriptions on Defendants' Websites. Defendants' acts are damaging Minka's reputation, its marks, and its goodwill.

38. With Defendants' sale of purported Minka products outside of Minka's authorized distributor network, Minka has no ability to monitor or enforce its quality control processes or standards. Minka cannot inspect the purported Minka products that Defendants purchase, or determine where or how Defendants purchased or obtained the purported Minka products.

39. When a customer has a complaint about Defendants' sale of a purported Minka product, Minka cannot determine if the purported Minka product was originally sold through Minka's authorized distributor network, or if the product was new when sold. Yet Minka may be required to respond to customers' complaints when they did not receive their products ordered from Defendants, had their orders unilaterally cancelled by Defendants, or had warranty inquiries and/or claims. This negatively impacts Minka's reputation, marks and goodwill.

40. Separately or in combination, Defendants' acts of marketing, offering for sale, and selling purported Minka products using Minka's marks and copyrights have caused confusion in the marketplace, and have tarnished Minka's stellar reputation, marks and goodwill. At all times material hereto, Minka has never authorized Defendants to use Minka's registered or common-law marks in connection with advertising and selling purported Minka products and services. Defendants' unauthorized adoption and use of Minka's registered and common-law marks with lighting products and ceiling fans have caused a likelihood that relevant consumers' will be confused and believe that Defendants are affiliated or associated with and/or sponsored by Minka.

41. At all times material hereto, Defendants have been aware of Minka's registered and common-law marks and copyrights.

42. On or about early May 2013, Minka, through its counsel, sent letter to Defendants BKD and Krazyman demanding that they cease and desist from violating Minka's intellectual property, including using copyrighted photographs of Minka's lighting products, and using Minka's marks with lighting products. A true and correct copy of Plaintiff's counsel's letter is attached as Plaintiff's Exhibit H and incorporated by reference herein. The cease and desist letter also demanded that Defendants refrain from soliciting Minka's authorized distributors to resell Minka products to Defendants in violation of Minka's resale policy.

43. Defendants did not respond to Minka's cease and desist letter. Minka was forced to notify Defendant BKD's webmaster to remove Minka's copyrighted photographs of its products. Only by Minka's takedown request under the Digital Millennium Copyright Act was Minka able to obtain the removal of its copyrighted photographs from one of Defendant BKD's websites.

44. As of this date, Defendants have continued to ignore Minka's demands and terminate their illegal activities, to Minka's detriment and injury. Defendants' current Websites display many copyrighted photographs of Minka's lighting products and ceiling fans. Further, Defendants continue to interfere with Minka's contractual relationships with its authorized distributors by soliciting Minka's authorized distributors to resell Minka products to Defendants at below the agreed-to minimum resale price.

45. By the breadth and scope of Defendants' Website listings of purported Minka products, details of Minka products, and photographs of Minka products, Defendants' Websites provide the illusion that Defendants are affiliated or associated with or otherwise sponsored or authorized by Minka, when they are not. Defendants have interfered with Minka's right to control the quality of the products it sells under its marks. On information and belief, BKD's reputation and business practice have earned it an F rating by the Better Business Bureau of New York, and numerous negative online postings regarding Defendants' poor service, including Defendants' failure to deliver and/or timely deliver products. See Plaintiff's Exhibits G -H.

46. In contrast, Minka has an outstanding reputation in the industry and strong goodwill associated with its marks. Minka has the right not to be associated or affiliated with Defendants, given Defendant BKD's abysmal reputation, as exemplified by its Better Business Bureau's rating.

47. On information and belief, Defendants also own, operate and/or manage the Eagles Lighting website (www.eagleslighting.com.) On information and belief,